UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MARK ANTHONY CANDLER,

            Plaintiff,

        v.

SANTA RITA COUNTY JAIL WATCH
COMMANDER, et al.,

            Defendants.

Case No.  11-cv-01992-CW

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT
AND PLAINTIFF'S MOTION FOR
LEAVE TO FILE SECOND AMENDED
COMPLAINT

(Dkt. Nos. 65, 70)

     Plaintiff, a state prisoner incarcerated at Pelican Bay
State Prison, filed this pro se civil rights action pursuant to
42 U.S.C. § 1983, complaining about his conditions of confinement
during the period of his incarceration as a pretrial detainee at
the Santa Rita County Jail (SRCJ).  On April 11, 2012, the Court
issued an Order finding that, in his First Amended Complaint
(1AC), Plaintiff had alleged "a cognizable claim that his
conditions of confinement at the SRCJ amounted to punishment, in
violation of due process," against Defendants Captain David
Sanchas, Sergeant David L. Snider and Sergeant Barry Quin.  See
Dkt. no. 4 at 2.

     On October 5, 2012, Defendants filed a motion for summary
judgment.  On May 13, 2013, the Court denied this motion without
prejudice to Defendants filing a renewed motion after the parties
conducted discovery.  See Dkt. no. 36 at 5.  Thereafter, on
August 19, 2013, Plaintiff filed two discovery-related motions,
see Dkt. nos. 44 and 45, which Defendants opposed.  On August 30,
2013, Defendants again filed their motion for summary judgment.

United States District Court
Northern District of California

See Dkt. no. 47.  On September 30, 2013, Plaintiff filed an
opposition to this motion.  See Dkt. no. 56.  Meanwhile, in June
2013, Plaintiff had filed a motion for leave to amend his
complaint, see Dkt. no. 40, and a motion to supplement his
complaint, see Dkt. no. 41.  On September 30, 2013, the Court
issued an order denying the motion to supplement the complaint,
denying without prejudice the motions to amend the complaint and
for summary judgment and referring the discovery disputes to a
magistrate judge.  See Dkt. no. 54 at 2.  Plaintiff was granted
leave to file a renewed motion to amend to name additional
defendants within twenty-one days after the resolution of the
discovery disputes.  See id. at 5, 6.

On May 21, 2014, the magistrate judge entered an order that
appeared to resolve all the discovery disputes.  See Dkt. no. 63.
When Plaintiff did not file an amended complaint within twenty-
one days, the Court issued an order that Plaintiff's 1AC was the
operative complaint in the action and set a briefing schedule for
Defendants' summary judgment motion.  See Dkt. no. 64.  On August
25, 2014, Defendants filed their summary judgment motion.  See
Dkt. no. 65.  On September 2, 2014, Plaintiff filed a "reply" to
the Court's order, arguing that the order was premature because
one discovery dispute remained unresolved.  See Dkt. no. 67.  On
September 4, 2014, the magistrate judge issued an order resolving
this discovery dispute.  See Dkt. no. 68.  On September 22, 2014,
Plaintiff filed his opposition to the summary judgment motion.
See Dkt. no. 69.  On September 25, 2014, he filed another motion
for leave to file an amended complaint.  See Dkt. no. 70.
Defendants have opposed this motion.  On October 17, 2014,

United States District Court
Northern District of California

United States District Court
Northern District of California

1   Plaintiff filed a "supplemental letter" requesting leave to add

2   new evidence to his opposition, which Defendants have opposed.

3   See Dkt. no. 73.

4       For the reasons discussed below, the Court grants

5   Defendants' motion for summary judgment, grants Plaintiff's

6   motion for leave to file a Second Amended Complaint (2AC) and

7   denies the request to add new evidence.

8                       ADMISSIBLE EVIDENCE

9       A district court may consider only admissible evidence in

10  ruling on a motion for summary judgment.  Fed. R. Civ. P.

11  56(c); Orr v. Bank of America, 285 F.3d 764, 773 (9th Cir. 2002).

12  A verified complaint may be used as an opposing affidavit under

13  Rule 56, as long as it is based on personal knowledge and sets

14  forth specific facts admissible in evidence.  Schroeder v.

15  McDonald, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995).  Plaintiff

16  fails to submit a declaration with either opposition, and the

17  September 22, 2014 opposition is not written under penalty of

18  perjury.  However, Plaintiff's September 30, 2013 opposition to

19  Defendants' previous motion for summary judgment is sworn under

20  penalty of perjury.  See Dkt no. 56 at 20.  Plaintiff's 1AC is

21  also under oath.  Therefore, the facts contained in Plaintiff's

22  September 30, 2013 opposition and his 1AC that are based on his

23  personal knowledge are admissible.

24      The evidence Plaintiff submits in his "supplemental letter,"

25  which consists of information about the classification of other

26  inmates, is duplicative of other evidence he submitted with his

27  September 30, 2013 opposition.  Therefore, the request to add new

28  evidence is denied.

3

BACKGROUND

In his 1AC, Plaintiff states the following:  From June 17, 2008 through December 13, 2010, when Plaintiff was a pretrial detainee at the SRCJ, Defendants placed him in disciplinary lock-up without filing disciplinary charges against him or providing a hearing.  During the entire time Plaintiff was in lock-up, Defendants failed to provide him with cleaning implements for his cell, allowed him only one hour of exercise every six to eight weeks and, from March 2009 to December 2010, allowed him to shower only once every three days.

Defendants present the following evidence:  Lieutenant Michael Molloy has been employed by the Alameda County Sheriff's Office (ACSO) for over eighteen years.  Declaration of Lt. Michael Molloy (Molloy Dec.) ¶ 2.  Since January 13, 2013, Lt. Molloy has been the Classifications Unit Lieutenant at SRCJ and, from May 31, 2009 through September 17, 2011, he worked as the Classifications Sergeant.  Id.  Lt. Molloy is personally familiar with the policies and procedures and customs and practices regarding the operation of the Classifications Unit, particularly as they relate to the placement of inmates in administrative segregation (administrative segregation).  Id. ¶ 4.  The ACSO Classifications Unit is responsible for the management of jail inmates, keeping inmates and staff safe by properly housing inmates and updating and maintaining the integrity of the Classifications Unit's files on inmates.  Id. ¶ 3.

With the exception of short term disciplinary isolation, administrative segregation is used as a non-punitive placement to isolate an inmate as a protective measure to maintain the

4

security of SRCJ and to ensure the safety of the inmate, staff and other inmates.  Id. ¶ 5.  Some of the factors the Classifications Unit examines to determine if an inmate is a safety risk are: (1) whether the inmate has previously served time in county jail or state prison; (2) the seriousness of the present crimes charged against the inmate; (3) whether the inmate has a history of assault charges or is currently being charged with a violent offense; and (4) whether the inmate is a validated prison gang member or otherwise affiliated with a gang.  Id. ¶ 7.

Lt. Molloy has reviewed the Classifications Unit's file pertaining to Plaintiff and, based on this review, he states the following:  On June 17, 2008, Plaintiff was booked into custody at SRCJ.  Id. ¶¶ 8, 9.  During Plaintiff's intake interview with the Classifications Unit, he admitted he was affiliated with the Acorn gang, which is a violent West Oakland street gang.  Id. ¶ 9, Ex. 1 (Plaintiff's Classification Intake Form).  The Classifications Unit placed Plaintiff in administrative segregation based upon his previous periods of incarceration, his pending charges of seven felonies, including attempted murder and discharging a firearm at an inhabited building, which carried a possible life sentence, and his affiliation with the Acorn gang. Id. ¶ 10.  In addition, the ACSO received a memorandum from the Alameda County District Attorney's Office requesting that Plaintiff and several other inmates related to the same criminal case be housed in administrative segregation and that Plaintiff be kept separate from certain other inmates.  Id. ¶ 11.  The memorandum cited a concern for the safety of certain members of

United States District Court
Northern District of California

5

United States District Court
Northern District of California

the public who would be better protected if the request were granted.  Id.

Plaintiff's case was reviewed by the Classifications Unit within seven days of Plaintiff's arrival at SRCJ, then every seven days for the first sixty days he was held in custody and then every thirty days for the remainder of his time in custody at SRCJ.  Id. ¶¶ 9, 13.

Sergeants Snider and Quin and Captain Sanchas state that, as officers in the Grievance Unit, they had no responsibilities or duties related to the classification of inmates and had no authority to override a decision by the Classifications Unit regarding an inmate's housing location.  Declaration of Sgt. David L. Snider, (Snider Dec.) ¶ 5, Declaration of Sgt. Barry Quin (Quin Dec.) ¶ 8, Declaration of Capt. David Sanchas (Sanchas Dec.) ¶ 6.  Lt. Molloy states that Santa Rita Grievance Unit personnel do not have authority to decide whether an inmate will be transferred to administrative segregation; that decision is made by the Classifications Unit.  Molloy Dec. ¶ 12.  Lt. Molloy also states that Grievance Unit personnel do not have authority to determine what hearing rights, if any, an inmate will be afforded when he is transferred into administrative segregation. Id.

In his sworn opposition, Plaintiff indicates that he was never interviewed by the Classifications Unit or informed of the reasons for his placement into administrative segregation, he never admitted he was a member of the Acorn gang, and the copy of the Classification Intake form submitted by Defendants does not pertain to him because his signature is forged, he would never

6

indicate he was a member of a gang, and some of the identifying characteristics on the form do not describe him.  He also states that, although previously he was incarcerated ten times, he was never considered to be a security risk and provides evidence that other pre-trial detainees associated with gangs and with serious charges against them were not placed in administrative segregation.

While Plaintiff was a pretrial detainee, he filed three administrative grievances.  On August 5, 2008, Plaintiff filed grievance number 08G-S1268, in which he stated that he should not have been classified in administrative segregation.  Quin Dec. ¶¶ 4-5, Ex. 1.  The review of the grievance was supervised by Sgt. Quin who, at that time, was Litigation-Grievance Sergeant at SRCJ.  Id. ¶¶ 2-4.  Sgt. Quin reviewed Plaintiff's Classifications Detail and consulted with the Classifications Unit.  Id. at ¶ 6.  His investigation confirmed that Plaintiff was to be placed in administrative segregation.  Id.  Sgt. Quin, as investigating supervisor, signed the written response to Plaintiff's grievance, which informed Plaintiff that the Classifications Unit, not the Grievance Unit, is responsible for the classification of inmates and suggested that Plaintiff contact the Classifications Unit about his classification concerns.  Id., Ex. 1 at 4.

On April 27, 2009, Plaintiff filed grievance number 09G-S0716, in which he stated that he had followed the instructions given in the response to his last grievance and had tried to contact the Classifications Unit, but no one responded.  Snider Dec. ¶¶ 4,5, Ex. 1.  Plaintiff also asserted that he was deprived

United States District Court
Northern District of California

of adequate cleaning supplies because he had not been given a mop or broom. Id. ¶ 5, Ex. 1. The review of this grievance was supervised by Sgt. Snider who, at that time, was Litigation-Grievance Sergeant at SRCJ. Id. ¶ 2. Sgt. Snider, as investigating supervisor, signed the grievance response, which again informed Plaintiff that the Classifications Unit handles the classification of inmates and suggested that Plaintiff send that unit a message about his classification concerns. Id. ¶ 6, Ex. 1 at 3. The grievance response also stated, "The housing unit deputy verified inmates are offered cell-cleaning supplies during their podtime. It is your responsibility to clean your living area, including the showers, when cell cleaning supplies are offered. The grievance process is not the first step to resolve a problem in the housing unit. In the future, if you have a problem in the housing unit, notify the housing unit deputy." Id. ¶ 7, Ex. 1 at 3.

In his sworn opposition, Plaintiff indicates that he asked the housing unit deputy several times for a mop or broom, but was only given a spray bottle containing cleaning liquid and a toilet brush. See Dkt. 56 at 13.

On August 16, 2009, Plaintiff filed grievance number 09G-S1223, in which he stated that he had sent several messages to the Classifications Unit, still had not heard from anyone, and did not know why he was placed in administrative segregation. Id., Ex. 2 at 1. He also stated that he was taken out of his cell only two hours per week, that it took him four days to get a shower and that he had "developed rashes and sores on my backside, most likely from infested feces and dirt from lack of

8

showering." Id.  Sgt. Snider investigated this grievance and signed the grievance response as the investigating supervisor. Id., Ex. 2 at 4.  The response informed Plaintiff, "The Grievance Unit again checked with the Classifications Unit and they have reviewed your status.  The Classifications Unit has verified, for the safety of staff and the facility you are to remain in Ad-Seg until further notice." Id.

Regarding Plaintiff's claim of insufficient exercise time, Sgt. Snider's review substantiated that Plaintiff received insufficient exercise time and, as a corrective action, Sgt. Snider sent a copy of the grievance response to the appropriate supervisors for review.  Id.

Regarding Plaintiff's claim about insufficient showers and a resulting rash, Sgt. Snider wrote, "The grievance process is not the first step to resolve a medical issue.  If you require medical attention for a rash, obtain and submit an Inmate Medical Request form.  You will be placed on a list to have your medical needs addressed by the housing unit nurse." Id.

Captain David P. Sanchas has been employed with the ACSO for approximately fourteen years and, at the time at issue, he was a lieutenant supervising the SRCJ Litigation-Grievance Unit.  His duties included reviewing inmate grievances and the Grievance Unit's responses.  Sanchas Dec.  ¶¶ 1-3.  If Capt. Sanchas agreed with the thoroughness of an investigation and its outcome, he would sign off on the Inmate Grievance Response Form as the Commanding Officer.  Id.  Capt. Sanchas reviewed Plaintiff's grievance number 09G-S1223 in which Plaintiff asserted he was inappropriately placed in administrative segregation, he did not

9

1   receive adequate exercise time and he was provided inadequate

2   time to shower.  Id. ¶ 4.  Capt. Sanchas signed the grievance

3   response as the commanding officer, thus approving Sgt. Snider's

4   investigation and conclusions regarding Plaintiff's claims.  Id.

5   ¶¶ 3, 5-7.

6                            DISCUSSION

7   I. Motion for Summary Judgment

8        A. Legal Standard

9        Summary judgment is only proper where the pleadings,

10  discovery, and affidavits show that there is "no genuine issue as

11  to any material fact and that the moving party is entitled to

12  judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Material

13  facts are those which may affect the outcome of the case.

14  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A

15  dispute as to a material fact is genuine if the evidence is such

16  that a reasonable jury could return a verdict for the nonmoving

17  party.  Id.

18       The court will grant summary judgment "against a party who

19  fails to make a showing sufficient to establish the existence of

20  an element essential to that party's case, and on which that

21  party will bear the burden of proof at trial."  Celotex Corp. v.

22  Catrett, 477 U.S. 317, 322-23 (1986).  The moving party bears the

23  initial burden of identifying those portions of the record that

24  demonstrate the absence of a genuine issue of material fact.  The

25  burden then shifts to the nonmoving party to "go beyond the

26  pleadings, and by his own affidavits, or by the 'depositions,

27  answers to interrogatories, or admissions on file,' designate

28  'specific facts showing that there is a genuine issue for

    trial.'"  Id. at 324.

                               10

United States District Court
Northern District of California

United States District Court
Northern District of California

1    In considering a motion for summary judgment, the court must

2    review the evidence in the light most favorable to the nonmoving

3    party.  Leslie v. Grupo ICA, 198 F.3d 1152, 1158 (9th Cir. 1999).

4    The court's function on a summary judgment motion is not to make

5    credibility determinations or weigh conflicting evidence with

6    respect to a disputed material fact.  T.W. Elec. Serv. v. Pacific

7    Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).

8    B. Due Process Claim Based on Placement in Administrative
        Segregation
9
     Plaintiff claims that Defendants violated his due process

10   rights by placing him in administrative segregation without

11   charging him with any violations, without a hearing and without

12   an opportunity to present his views.  Defendants do not dispute

13   that Plaintiff was placed in administrative segregation for over

14   two and one-half years while he was a pretrial detainee at SRCJ

15   without charging him with a violation.  However, they argue this

16   was constitutional because Plaintiff was placed in administrative

17   segregation not as punishment, but for security reasons and a

18   hearing is not constitutionally required when a pretrial detainee

19   is placed in administrative segregation for nonpunitive reasons.

20        1. Legal Standard

21        A pretrial detainee is not protected by the Eighth

22   Amendment's proscription against cruel and unusual punishment

23   because he has not been convicted of a crime.  Bell v. Wolfish,

24   441 U.S. 520, 535 & n.16 (1979).  Pretrial detainees are

25   protected from punishment without due process, however, under the

26   Due Process Clause of the Fourteenth Amendment.  United States v.

27   Salerno, 481 U.S. 739, 746-47 (1987); Bell, 441 U.S. at 535-36;

28

Pierce v. County of Orange, 526 F.3d 1190, 1205 (9th Cir. 2008) (detainees are protected by the Due Process Clause against jail conditions that amount to punishment).

Interests that are procedurally protected by the Due Process Clause may arise from two sources——the Due Process Clause itself and laws of the states. Meachum v. Fano, 427 U.S. 215, 223-27 (1976). A court presented with a procedural due process claim by a pretrial detainee should first ask if the alleged deprivation amounts to punishment and therefore implicates the Due Process Clause itself; if so, the court then must determine what process is due. Bell 441 U.S. at 537-38.

Some of the tests applied to determine whether an action is punitive are whether the action: (1) involves an affirmative disability or restraint; (2) comes into play only on a finding of scienter; (3) will promote the aims of punishment——retribution and deterrence; (4) is applied to behavior that is a crime; (5) has an alternative purpose to which it may rationally be connected; and (6) appears excessive in relation to the alternative purpose assigned. Id. at 537-38.

Absent a showing of an expressed intent to punish on the part of the detention officials, the determination of whether an action is punitive will usually turn on "whether an alternative purpose to which the restriction may rationally be connected is assignable for it, and whether it appears excessive. . ." Id. at 538. "Thus, if a particular restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to punishment." Id. at 539. "Maintaining institutional security and preserving internal order

12

and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of both prisoners and pretrial detainees." Id. at 546-47.

Due process for placement in disciplinary segregation as punishment upon a finding that the prisoner was guilty of misconduct cannot be imposed without the procedural requirements of Wolff v. McDonnell, 418 U.S. 539 (1974). Mitchell v. Dupnik, 75 F.3d 517, 523-26 (9th Cir. 1996). Wolff established the following procedural requirements for disciplinary hearings: (1) written notice of the charges; (2) a period of no less than twenty-four hours to prepare for the hearing; (3) a written statement by the factfinders as to the evidence relied on and reasons for the disciplinary action; (4) a limited right to call witnesses and present documentary evidence at the hearing; and (5) the limited right to receive assistance from a fellow inmate or correctional staff. Wolff, 418 U.S. at 564-70.

However, the value of the Wolff procedures is minimal in the context of a decision to segregate a prisoner for security reasons because the inquiry does not involve the factual determination of guilt, but relies on largely subjective factors. Toussaint v. McCarthy, 801 F.2d 1080, 1100 (9th Cir. 1986), overruled in part on other grounds, Sandin v. Conner, 515 U.S. 472 (1995). Due process for placement in administrative segregation for security purposes requires only an informal nonadversary hearing within a reasonable time after the prisoner is segregated, notification to the prisoner of the reasons for the segregation and allowing the prisoner an opportunity to present his views; it does not require detailed written notice of

charges, representation by counsel or counsel-substitute, an opportunity to present witnesses or a written decision describing the reasons for placing the prisoner in administrative segregation.  Id. at 1100-01.

      2. Analysis—Proper Defendants[1]

    Liability may be imposed on an individual defendant under 42 U.S.C. § 1983 if the plaintiff can show that the defendant's actions both actually and proximately caused the deprivation of a federally protected right.  Lemire v. California Dept. Corrections & Rehabilitation, 726 F.3d 1062, 1074 (9th Cir. 2013); Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988); Harris v. City of Roseburg, 664 F.2d 1121, 1125 (9th Cir. 1981).  A person deprives another of a constitutional right within the meaning of § 1983 if he does an affirmative act, participates in another's affirmative act or omits to perform an act which he is legally required to do, that causes the deprivation of which the plaintiff complains.  Leer, 844 F.2d at 633.

    It is undisputed that Defendants' only connection to Plaintiff's due process claim was their review and denial of his administrative grievances about his placement in administrative segregation.  Plaintiff presents no evidence to dispute Defendants' testimony that, as Grievance Unit personnel, they were not involved in decisions to place inmates in administrative

United States District Court
Northern District of California

---

[1]Because the Court finds that the named Defendants are not the proper defendants for this claim, it does not rule on whether Plaintiff's placement in administrative segregation constituted a due process violation.  As discussed below, the Court grants Plaintiff's motion to file an amended complaint to name the proper defendants and it is anticipated that the merits of his due process claim will be addressed as it applies to the newly named defendants.

United States District Court
Northern District of California

segregation, they were not involved in the Classifications Unit's decision to place Plaintiff in administrative segregation and they lacked authority to overrule the Classifications Unit's decisions to place inmates in administrative segregation. Defendants' testimony is corroborated by Lt. Molloy, who confirms that Grievance Unit personnel lack authority to decide whether an inmate is transferred into administrative segregation and to determine what hearing rights, if any, will be given to inmates transferred into administrative segregation.

Citing Johnson v. Duffy, 588 F.2d 740, 743-44 (9th Cir. 1978), Plaintiff argues that, even if Defendants had no authority to challenge the Classifications Unit's original decision, their denial of his grievances caused him to continue to be held in administrative segregation without due process.  In Johnson, the sheriff failed to fulfill his statutory duty to appoint members of a classification committee to determine whether the plaintiff should be transferred from the honor camp to jail.  Id. at 742-43.  The plaintiff was transferred without review or due process. Id. at 742.  Because the transfer required forfeiture of the plaintiff's honor camp earnings, he claimed he was deprived of due process.  Id.  The court explained that "personal participation is not the only predicate for § 1983 liability," and that the requisite causal connection can be set "in motion by a series of acts by others which the actor knows or reasonably should know would cause others to inflict constitutional injury." Id. at 743-44.  The court held that the sheriff could be liable because his failure to fulfill his statutory duty to appoint a classification committee resulted in the due process violation.

15

United States District Court
Northern District of California

Johnson is distinguishable.  In Johnson, the defendant had a duty to act and failed to do so.  Here, Defendants fulfilled their duty to investigate Plaintiff's grievances by contacting the Classifications Unit which informed them that Plaintiff was in administrative segregation because he was a security risk. The fact that Defendants did not remedy the grievances does not mean their failure to act is analogous to the failure to act by the sheriff in Johnson.

Plaintiff also argues the fact that Sgt. Snider affirmed Plaintiff's separate grievance about insufficient time to exercise and took "corrective action" by sending his affirmance to the appropriate supervisor shows that Defendants could have affirmed his grievance about placement in administrative segregation and taken corrective action by sending it to the "appropriate supervisor."  Plaintiff's argument fails to distinguish between actions taken by the Classifications Unit in placing him in administrative segregation and actions taken by jail personnel that might cause unsafe conditions.  As stated by Defendants and confirmed by Lt. Molloy, the Grievance Unit did not have authority to overrule decisions made by the Classifications Unit.  Plaintiff submits no evidence to dispute this.

Accordingly, Plaintiff fails to submit evidence to raise a dispute of material fact that Defendants violated his due process rights by denying his administrative grievances regarding his classification.  Summary adjudication is granted to Defendants on this claim.

16

United States District Court
Northern District of California

C. Retaliation Claim[2]

Plaintiff claims that the Alameda County District Attorney's office requested that he be placed in administrative segregation "in retaliation" or as a courtroom strategy.  To state a claim based on retaliation, Plaintiff must show that he was retaliated against for exercising his constitutional rights and that the retaliatory action did not advance a legitimate penological goal, such as preserving institutional order and discipline.  Barnett v. Centoni, 31 F.3d 813, 815-16 (9th Cir. 1994).

In his sworn opposition, Plaintiff briefly states that he was a witness to a violent crime, he refused to identify the shooter and he threatened to sue the District Attorney's office.  Dkt. no. 56 at 7.  However, this brief statement does not include evidence that Defendants took any action in retaliation for Plaintiff's alleged threat to sue the District Attorney's office.  Therefore, summary adjudication is granted to Defendants on this claim.

D. Due Process Claim based on Conditions of Confinement

In his sworn 1AC and opposition, Plaintiff states that, from June 17, 2008 through December 13, 2010, he received one hour of exercise every six to eight weeks, that although he asked for a broom or mop to clean his cell, he never received them and that, from March 2009 to December 2010, he was able to shower once every three days.  However, the grievances upon which his claims

---

[2] Although Plaintiff did not allege a retaliation claim in his 1AC nor did the Court include a retaliation claim in its Order to Show Cause, Defendants address it because Plaintiff insists his allegation that he was placed in administrative segregation by the District Attorney "in retaliation" asserts such a claim.

17

are based are dated April 27, 2009 (administrative segregation and cleaning supplies) and August 16, 2009 (administrative segregation, exercise and showers).  Thus, there is no evidence that Defendants were aware, at the relevant times, of any of Plaintiff's complaints other than those claimed in his grievances.

Defendants argue that none of the conditions described in Plaintiff's grievances constitutes a substantial deprivation, that they were not responsible for imposing these conditions and that, even if they were, they were not deliberately indifferent to Plaintiff's needs.

Pretrial detainees' rights under the Fourteenth Amendment are comparable to inmates' rights under the Eighth Amendment; therefore, the same standard applies.  Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998) (citing Bell, 441 U.S. at 535 n.16). Under the Due Process Clause, detainees are protected against jail conditions that amount to punishment.  Pierce, 526 F.3d at 1205.

A prison official violates a pretrial detainee's constitutional rights when two requirements are met.  First, the deprivation must be, objectively, sufficiently serious that the omission results in the denial of the "minimal civilized measure of life's necessities."  Frost, 152 F.3d at 1128 (citing Farmer v. Brennan, 511 U.S. 825, 835 (1994)).  In determining whether a deprivation of a basic necessity is sufficiently serious to satisfy the objective component of a constitutional claim, a court must consider the circumstances, nature, and duration of the deprivation.  Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir.

United States District Court
Northern District of California

2000).  The more basic the need, the shorter the time it can be withheld.  Id.

Second, the responsible prison official must have acted subjectively with "deliberate indifference" to an inmate's health or safety.  Farmer, 511 U.S. at 834.  Deliberate indifference is shown when the prison official knows of and disregards an excessive risk to the inmate's health or safety.  Id. at 837. The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.  Id.  A claimant need not show, however, that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm.  Id. at 842; see also Robins v. Meecham, 60 F.3d 1436, 1439-40 (9th Cir. 1995).

### 1. Farmer's Objective Prong

#### a. Outdoor Exercise

Exercise is one of the basic human necessities protected by the Eighth Amendment.  LeMaire v. Maass, 12 F.3d 1444, 1457 (9th Cir. 1993).  Prisoners "confined to continuous and long-term segregation" may not be deprived of outdoor exercise.  Keenan v. Hall, 83 F.3d 1083, 1089-90 (9th Cir. 1996), amended, 135 F.3d 1318 (9th Cir. 1998).  The "long-term" deprivation of outdoor exercise to such prisoners is unconstitutional.  LeMaire, 12 F.3d at 1458; see, e.g., Lopez v. Smith, 203 F.3d 1122, 1132-33 (9th Cir. 2000) (en banc) (denial of outdoor exercise for six and one-half weeks meets the objective prong of Eighth Amendment deliberate indifference claim); Keenan, 83 F.3d at 1089-90

United States District Court
Northern District of California

(denial of outdoor exercise for six months while inmate was in segregation sufficient to proceed to trial); <u>Pierce</u>, 526 F.3d at 1213 (holding that ninety minutes of exercise per week for detainees in administrative segregation constituted punishment under § 1983 but approving requirement that detainees have at least two hours of exercise per week).  California regulations require county jails to provide pretrial detainees with at least three hours of exercise per week.  Cal. Code Regs. tit 15, § 1065.

Although in his opposition, Plaintiff indicates he received one hour of exercise every six to eight weeks, his grievance stated that he was allowed two hours of exercise per week.  As discussed previously, Defendants were only aware that Plaintiff received two hours of exercise per week; there is no evidence that they were aware of worse conditions that Plaintiff describes in his 1AC and opposition.  Under <u>Pierce</u>, two hours of exercise per week is constitutional.  Therefore, Plaintiff's evidence fails to satisfy the objective prong of an Eighth Amendment claim as it relates to lack of exercise.

b. Cleaning Supplies

According to Plaintiff's grievance, he did not receive a broom or mop to clean his cell.  Defendants argue that Plaintiff's claim fails because, at SRCJ, "cleaning supplies" are distributed to inmates upon request so that they can clean and sanitize their immediate housing area.  Snider Dec. at ¶ 7.

Prison officials have a duty to ensure that prisoners are provided with adequate sanitation.  <u>Johnson</u>, 217 F.3d at 731. "The more basic the need, the shorter the time it can be

20

withheld." <u>Id.</u>  Sanitation is a basic need.  <u>Anderson v. County of Kern</u>, 45 F.3d 1310, 1314 (9th Cir.) (severe or prolonged lack of sanitation can constitute an infliction of pain within the meaning of the Eighth Amendment), <u>amended</u>, 75 F.3d 448 (9th Cir. 1995).  Plaintiff admits that he was provided with a toilet brush and spray bottle with cleaner to clean his cell.  No authority requires that inmates receive cleaning supplies of their choice. Therefore, Plaintiff's evidence fails to establish the objective prong of an Eighth Amendment violation.  Summary adjudication is granted to Defendants on this claim.

c. Showers

According to Plaintiff's grievance, he was allowed to shower every four days.  Defendants dispute this with evidence that Plaintiff was able to take showers during his pod time and, according to them, he received adequate pod time each week.

Inmates' showers may be limited to as few as one per week without violating the Eighth Amendment.  <u>See</u> <u>Fleming v. Brown</u>, 2011 WL 3206854, at *4 (N.D. Cal.)(citing <u>Davenport v. DeRobertis</u>, 844 F.3d 1310, 1316-17 (7th Cir. 1988)); <u>Purvis v. Arpaio</u>, 2012 WL 4466566, at *3 (D. Ariz.) (denial of daily showers not sufficiently serious to rise to level of constitutional violation).

Therefore, even taking Plaintiff's evidence as true, he has failed to establish that being allowed to shower every four days was sufficiently serious to satisfy the objective prong of an Eighth Amendment claim.  Summary adjudication is granted to Defendants on this claim.

1

2. <u>Farmer</u>'s Subjective Prong

Even if the objective requirement of Plaintiff's conditions of confinement claims had been met, he has not provided evidence of the subjective prong of these claims.  As mentioned above, the only evidence linking any Defendant to these claims is Plaintiff's three grievances.

a. Exercise Time

On August 16, 2009, Plaintiff submitted a grievance stating that he was allowed only two hours of exercise per week.  Sgt. Snider investigated by interviewing Plaintiff's housing unit deputies and found that Plaintiff received three hours of exercise per week.  Snider Dec. ¶ 11.  Sgt. Snider knew that ACSO policies and procedures provided that inmates were to receive five hours of exercise per week, but that state regulations set a minimum of three hours per week.  <u>Id.</u>  Based on his finding that Plaintiff received three hours of exercise per week, Sgt. Snider could have reasonably believed that there was no constitutional violation because three hours per week met the state requirement and two hours per week was constitutional under <u>Pierce</u>, 526 F.3d at 1213.  However, Sgt. Snider affirmed Plaintiff's grievance because Plaintiff was not provided the five hours prescribed by ACSO.  Sgt. Snider then sent his findings to the appropriate supervisor, most likely the supervisor of Plaintiff's housing unit, who he reasonably believed would provide Plaintiff with more time to exercise.

At that time, Plaintiff had not made the allegation that he now makes in his complaint that he was receiving one hour of exercise every six to eight weeks.  Based on Plaintiff's

grievance, there was no constitutional violation.  Even so, Sgt.

Snider took Plaintiff's claim seriously, investigated it,

affirmed it and then sent the report to the supervisor he thought

would remedy Plaintiff's exercise deficiency.  These actions do

not show that Sgt. Snider disregarded an excessive risk to

Plaintiff's health.  Because Sgt. Snider was not deliberately

indifferent, Capt. Sanchas' approval of Sgt. Snider's actions

also did not constitute deliberate indifference.

> b. Cleaning Supplies

On April 27, 2009, Plaintiff submitted a grievance briefly

stating that he had been at SRCJ for over ten months and had not

received a mop or broom.  Sgt. Snider, the investigating

supervisor, found that the housing unit deputy verified that

inmates are offered "cleaning supplies" during their pod time and

that it was Plaintiff's responsibility to clean his cell with the

supplies that were offered.  Sgt. Snider informed Plaintiff of

his findings on the grievance response form.

Sgt. Snider's response does not show deliberate

indifference; he investigated Plaintiff's complaint, was told by

the housing unit deputy that Plaintiff would be provided cleaning

supplies when he asked for them and informed Plaintiff how he

could obtain them.

> c. Showers

Plaintiff's grievance stated that he could take a shower

only every four days and that he was developing a rash.  Sgt.

Snider responded to Plaintiff's statement about his rash by

informing Plaintiff that he could obtain medical treatment by

submitting a medical request form.  Because being allowed to

1  shower every four days did not establish the objective prong of a

2  constitutional violation, it was not unreasonable for Sgt. Snider

3  not to provide more showers.  Therefore, Plaintiff's evidence

4  does not show that Sgt. Snider was deliberately indifferent to

5  Plaintiff's serious need.

6  II. Qualified Immunity

7      Defendants argue that, even if a constitutional violation

8  occurred, they are entitled to qualified immunity on each of

9  Plaintiff's claims.  The defense of qualified immunity protects

10 "government officials . . . from liability for civil damages

11 insofar as their conduct does not violate clearly established

12 statutory or constitutional rights of which a reasonable person

13 would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818

14 (1982).  A court considering a claim of qualified immunity must

15 determine whether the plaintiff has alleged the deprivation of an

16 actual constitutional right and whether the right was clearly

17 established, such that it would be obvious to a reasonable

18 officer that his conduct was unlawful in the situation he

19 confronted.  Pearson v. Callahan, 555 U.S. 223, 236, 244 (2009).

20     As discussed above, the evidence shows that Defendants did

21 not violate Plaintiff's due process rights by denying his

22 grievances about his placement in administrative segregation.

23 However, assuming the existence of a constitutional violation,

24 the evidence, viewed in Plaintiff's favor, shows that it would

25 not have been clear to reasonable officers in Defendants'

26 position that it was unlawful to deny Plaintiff's grievances

27 after investigating with the Classifications Unit and

28 communicating the Classifications Unit's response to Plaintiff,

United States District Court
Northern District of California

24

United States District Court
Northern District of California

1    especially in light of the fact that they had no authority to

2    overrule any Classifications Unit decision.

3        The undisputed evidence shows that Plaintiff's

4    constitutional right to adequate exercise was not violated by

5    Sgt. Snider and Capt. Sanchas.  However, assuming the existence

6    of a constitutional violation, the evidence, viewed in the light

7    most favorable to Plaintiff, shows that it would not have been

8    clear to reasonable officers in the position of Sgt. Snider and

9    Capt. Sanchas that it was unlawful to affirm the grievance and

10   send it to the relevant supervisor for correction after

11   investigating and finding that, although Plaintiff was allowed a

12   constitutionally acceptable two hours of exercise per week, he

13   was not allowed the hours prescribed by ACSO.

14       The undisputed evidence shows that Sgt. Snider did not

15   violate Plaintiff's constitutional rights by denying his

16   grievances about receiving one shower every three or four days

17   and not being provided with a mop or broom to clean his cell.

18   However, assuming the existence of a constitutional violation,

19   the evidence, viewed in the light most favorable to Plaintiff,

20   shows that it would not have been clear to a reasonable officer

21   in Sgt. Snider's position it was unlawful to deny the grievances,

22   after investigating them and finding that Plaintiff could receive

23   cleaning supplies and that he was provided with constitutionally

24   sufficient opportunities to shower.

25       Accordingly, Defendants are granted summary adjudication

26   based on qualified immunity on all claims.

27

28

25

United States District Court
Northern District of California

III. Motion for Leave to File a Second Amended Complaint

Plaintiff moves for leave to file a Second Amended Complaint (2AC) to add ten individuals as defendants who, he alleges, are responsible for placing him in administrative segregation.  The Court's September 30, 2013 order, referring discovery matters to a magistrate judge, granted Plaintiff leave to file an amended complaint within twenty-one days after resolution of the discovery disputes.  Defendants argue the motion to amend should be denied because Plaintiff filed it more than twenty-one days after the magistrate judge's April 21, 2014 order, which, they claim, resolved all discovery disputes.  However, Plaintiff's explanation that the April 21, 2014 order did not resolve one outstanding discovery dispute is well-taken, especially in light of the fact that the magistrate judge entered another discovery order on September 4, 2014.  Because Plaintiff's motion for leave to amend was filed on September 25, 2014, within twenty-one days of the last discovery order, the Court finds that it is timely.

Federal Rule of Civil Procedure 15(a)(2) provides that leave to amend a complaint should be "freely given when justice so requires."  Fed. R. Civ. P. 15(a)(2).  "Four factors are commonly used to determine the propriety of a motion for leave to amend. These are:  bad faith, undue delay, prejudice to the opposing party, and futility of amendment."  Ditto v. McCurdy, 510 F.3d 1070, 1079 (9th Cir. 2007) (citations and internal quotation marks omitted).  The decision to grant or deny a request for leave to amend rests in the discretion of the trial court. California v. Neville Chem. Co., 358 F.3d 661, 673 (9th Cir. 2004).

United States District Court
Northern District of California

1     The fact that Plaintiff filed this motion twenty-one days

2  after the resolution of the last discovery dispute is evidence

3  that he did not file it in bad faith or with undue delay.

4  Amending the due process claim to name the proper defendants is

5  not futile because summary adjudication was granted to the

6  current Defendants on the ground that they were not the proper

7  defendants.  Furthermore, allowing Plaintiff to amend his

8  petition to add the proper defendants will not prejudice the

9  current Defendants because their motion for summary adjudication

10  has been granted.  Accordingly, Plaintiff's motion for leave to

11  file a 2AC is granted.

12                CONCLUSION

13     Based on the foregoing, the Court rules as follows:

14     1. Plaintiff's motion for leave to file a 2AC is granted.

15  The Clerk is directed to file Plaintiff's 2AC.  After the 2AC is

16  filed, the Court shall issue a separate order of service.

17     2. The motion for summary adjudication in favor of the

18  current Defendants is granted.

19     3. This Order terminates docket numbers 65 and 70.

20     IT IS SO ORDERED.

21  Dated:  January 26, 2015

22

23                  CLAUDIA WILKEN
                  United States District Judge

24

25

26

27

28